**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

IN RE: CHARLES HALL                                    )
                                                       )
                                                       )
                                                       )        2:23-mc-00001-JPH-MG
                                                       )
                                                       )
                                                       )
                                                       )

**MEMORANDUM IN SUPPORT OF MOTION BY CHARLES HALL TO UNSEAL**
**ALL DEPOSITIONS IN *UNITED STATES V. ROGERS***

Charles Michael Hall was convicted and sentenced to death for the murder of a fellow

prisoner in the mental health unit of the United States Medical Center for Federal Prisoners. The

United States District Court for the Western District of Missouri imposed the death sentence on

July 18, 2014. The Eighth Circuit affirmed Mr. Hall's sentence on direct appeal and the Supreme

Court denied certiorari.

On March 3, 2021, the Western District of Missouri appointed undersigned counsel

Angela Elleman, Chief of the Indiana Federal Community Defenders (IFCD) Capital § 2255

Unit, and Keith O'Connor to represent Mr. Hall in post-conviction proceedings. Ms. Elleman

and Mr. O'Conner entered appearances on April 8, 2021. On August 17, 2023, undersigned

counsel Italia Patti, an Assistant Federal Defender in the IFCD Capital § 2255 Unit, also entered

an appearance. Counsel are preparing a § 2255 motion challenging Mr. Hall's death sentence.[1] It

is in that capacity that undersigned counsel seek to have the depositions in Mr. Rogers' case

unsealed.

---

[1] As a result of the disruption caused by the COVID-19 pandemic, the government agreed
to waive any statute of limitations defense so long as Mr. Hall files his § 2255 motion by
February 9, 2024.

1

The depositions that were taken in *United States v. Rogers*, 2:16-cr-0018, are directly relevant to Mr. Hall's post-conviction proceedings challenging his death sentence. In Mr. Rogers' case, there were allegations of misconduct by attorneys from the Department of Justice Capital Case Section (CCS). Some of the misconduct allegations concerned hiding information about the BOP's failure to address Mr. Rogers' self-reported mental health problems and homicidal ideations. Mr. Hall was also convicted of a homicide in the BOP after self-reporting homicidal ideations and seeking mental health care. Additionally, in Mr. Rogers' case, CCS attorney James Peterson was implicated in the alleged misconduct. Mr. Peterson was one of the prosecutors who represented the United States at Mr. Hall's trial.

To briefly review the relevant procedural history of Mr. Rogers' case: Andrew Rogers was indicted for the murder of a fellow prisoner in USP Terre Haute on May 17, 2016. On May 31, 2016, the government filed a Notice of Intent to Seek the Death Penalty. On the same day, Monica Foster, Chief Defender of IFCD, and Gwendolyn Beitz, Assistant Federal Defender, entered their appearances on behalf of Mr. Rogers, and they were later joined as counsel by Nathan Chambers and Patrick Burke. On January 29, 2018, counsel for Mr. Rogers filed Defendant Andrew Rogers' Motion to Strike the Notice of Intent to Seek the Death Penalty for the Government's Intentional Withholding and Destruction of *Brady* Information because "counsel for Mr. Rogers [became] aware that one of the prosecutors in charge of this case during the death-penalty authorization process conducted more than a dozen witness interviews, which revealed information favorable to Mr. Rogers. Mr. Rogers has also become aware of rampant misconduct in the Department of Justice Capital Case Section (CCS)." Dkt. No. 92 at 1. In a declaration filed in a sex discrimination lawsuit by a CCS colleague, former CCS prosecutor Amanda Haines said that "the CCS attorney in charge of the death-penalty protocol review of the

case against Mr. Rogers," James Peterson, "intentionally destroyed favorable information and then provided false information in an effort to cover up his misdeeds." *Id.* at 4. Ms. Haines' declaration explained:

> After familiarizing myself with Rogers, I learned that Mr. Peterson had committed a fundamental error in judgment and a violation of the *"Ogden Memo,"* by interviewing over a dozen witnesses without a law enforcement agent or other witness being present. These witnesses were suspected of having information that was potentially harmful to the government's penalty phase case. Mr. Peterson compounded this error by destroying his interview notes, a fact he initially falsely denied, neglecting to memorialize his conversations with the witnesses, and failing to keep records of what documents he showed them to refresh their recollections or lack thereof.

*Id.* at 5 (quoting Haines Dec, attached as Exhibit 1 to Dkt. No. 92) (footnote omitted) (emphasis in original).

In response to this motion, on March 16, 2018, the Court announced its "intent to allow depositions of Amanda Haines and James Peterson regarding the *Brady* violation allegations Rogers makes in his motion" and that it would "allow limited discovery preliminary to those depositions." Dkt. No. 114. The government moved for reconsideration, *see* Dkt. No. 137, which the Court denied, *see* Dkt. No. 243.

Counsel for Mr. Rogers uncovered additional evidence of misconduct, including a document noting that the BOP had not responded adequately to Mr. Rogers' mental health issues and that "were these matters to be addressed in a death penalty proceeding, then the BOP might be embarrassed as a result of its incomplete response to Roger's mental health issues." Dkt. 161 at 1. The Court characterized this document as "directly contradict[ing] the position that the Government repeatedly has taken that it has not withheld any information that would indicate that the Bureau of Prisons was negligent in treating Rogers' mental health conditions." *Id.* at 2. This Court also noted the government's "lack of candor" and that the government's "assurances

3

that it understands, has complied with, and will comply with its *Brady* obligations ring hollow."

*Id.* at 3. Mr. Rogers' counsel requested to take additional depositions, of Dr. Steven Eckert and James Warden, and the Court granted that request. Dkt. 243. The Court did, however, limit the scope of the depositions. Dkt. No. 271.

Pursuant to the Court's order, the deposition of Ms. Haines would address:

(1) Questions pertaining to the contents of Haines's declaration; (2) Questions pertaining to statements allegedly made to Haines by Peterson as reflected in the document Haines prepared that was provided to Rogers as part of the discovery in this cause; (3) Conversations with Peterson regarding this case, including those pertaining to any witness interviews he conducted; (4) The basis of Haines's allegations of alleged acts of misconduct by Peterson, specifically: i. He interviewed over a dozen witnesses without a law enforcement officer or other witness being present, in contravention of the Ogden Memo, ii. He destroyed his notes, iii. He initially lied to Haines regarding the destruction of his notes, iv. He did not memorialize his conversations with the witnesses, v. He did not make a record of the documents he used to refresh the witnesses' recollections, and vi. The witnesses provided what is arguably Brady material; (5) Questions pertaining to the withholding of discoverable information in this case; and (6) Questions pertaining to the investigative and discovery policies of the DOJ.

Dkt. No. 271 at 2. And the deposition of James Peterson would address:

(1) Questions pertaining to the contents of Peterson's declaration; (2) Questions pertaining to e-mail communications between Peterson and P. Kevin Carwile concerning the authorization process or the investigation undertaken by CCS protocol attorneys in furtherance of authorization of the death penalty from November 12-17, 2015; (3) Questions pertaining to documents related to Peterson's interviews and his preparation of any memoranda in connection therewith; (4) Conversations with Haines regarding this case, including those pertaining to any witness interviews he conducted; (5) Whether he interviewed witnesses without a law enforcement officer or other witness being present; (6) The circumstances of the witness interviews; (7) The witnesses who were interviewed; (8) What the witnesses said; (9) Whether he prepared notes of his interviews; (10) Whether he destroyed his notes of the interviews; (11) Whether he made a record of any documents used to refresh the witnesses' recollections; (12) His statements to Haines regarding his notes of the interviews; (13) Whether the witnesses provided Brady material during the interviews, and if so, what it was; (14) Questions pertaining to the withholding of discoverable information in this case; and (15) Questions pertaining to his investigative and discovery policies and the policies of the DOJ.

*Id.* at 2-3.

Mr. Rogers' counsel took Mr. Peterson's deposition on February 8, 2019, and took Ms. Haines' deposition on February 11, 2019. Dkt. No. 288. Counsel for Mr. Rogers furnished the depositions to the Court, and, in a motion signed by Monica Foster, requested that the depositions be sealed. Dkt Nos. 288, 290, 296, 298. In Response to Ms. Foster's motions, the Court ordered that the depositions should be maintained under seal. Dkt. Nos. 292, 301.

On March 18, 2019, "[a]fter reviewing the parties' relevant submissions," the Court "determined that Defendant Andrew Rogers' Motion to Strike the Notice of Intent to Seek the Death Penalty for the Government's Intentional Withholding and Destruction of Brady Information cannot be resolved without an evidentiary hearing. In this motion and supplements to this motion, Rogers has raised serious allegations of misconduct on the part of various Government attorneys." Dkt. No. 309 at 1 (internal record citations omitted). On March 29, 2019, in an Order granting (in part) a motion for an extension of time, the Court noted:

> In granting the Government's motion, the Court notes that the Government misapprehends the scope of the hearing. The initial inquiry into possible misconduct was precipitated by Amanda Haines' declaration, which indicated that James Peterson had destroyed what was arguably *Brady* material in Rogers' case. However, information gleaned though the discovery process into that specific allegation, coupled with what appear to be multiple Government filings containing false statements, has created concerns about additional possible misconduct and convinced the Court that a full inquiry is necessary. As such, the Government's statement that "there is only one issue potentially in need of 'clarification': the apparent conflicting accounts of Dr. Eckert's statements as recounted by the witness himself in his deposition and as summarized by Attorney Peterson and AUSA Warden following their responsive interviews of Dr. Eckert," is incorrect. Rather, there appear to be many allegations of serious government misconduct that warrant inquiry and clarification.

Dkt. No. 332 at 1-2 (internal record citations omitted).

As the hearing approached, the government sought and received permission from the Attorney General to cease seeking the death penalty in return for Mr. Rogers' guilty plea and

5

acceptance of a life sentence. Dkt Nos. 393, 395. Although Mr. Rogers' offer to plead guilty in exchange for a life sentence had been pending for years (since well in advance of his indictment), the deauthorization occurred just days before the misconduct hearing was scheduled to commence. Thus, the hearing on "many allegations of serious government misconduct that warrant inquiry and clarification" that initially "was precipitated by Amanda Haines' declaration, which indicated that James Peterson had destroyed what was arguably *Brady* material in Rogers' case" never occurred. Because no hearing ever occurred and because the depositions of Ms. Haines, Mr. Peterson, and other witnesses are under seal, there is limited publicly available information about the alleged misconduct.[2]

The information in these sealed depositions is highly relevant to Mr. Hall's litigation. Like Mr. Rogers, Mr. Hall was accused and ultimately found guilty of murdering a fellow federal prisoner. Like Mr. Rogers, Mr. Hall had a documented history of mental health problems and specifically sought help from BOP staff because he did not want to act on his homicidal ideations. And Mr. Peterson, who was accused of misconduct in Mr. Rogers' case specifically for withholding potentially mitigating information about Mr. Rogers' mental health care, represented the government in its prosecution of Mr. Hall. *See* Docket Report, *United States v. Hall*, 6:10-cr-02029. Mr. Peterson may have committed misconduct in Mr. Hall's case.

Non-parties may intervene in criminal cases to assert a right to access documents and information. *See, e.g.*, *United States v. Blagojevich*, 612 F.3d 558, 559 (7th Cir. 2010) (citing *In*

---

[2] Certainly, the public is interested in potential misconduct by CCS prosecutors, as evidenced by a *New York Times* article on the topic, which appeared on the first page, above the fold. *See* Katie Benner, *At the Justice Dept.'s Death Penalty Unit, Accusations of Favoritism, Gender Bias, and Unwanted Groping*, New York Times, https://www.nytimes.com/2018/03/31/us/politics/justice-department-harassment-bias.html. Despite the headline, this article covers not only sexual harassment and gender discrimination, but also professional misconduct such as withholding *Brady* material.

*re Associated Press*, 162 F.3d 503, 507-08 (7th Cir. 1998); Fed. R. Crim. P. 57(b)); *see also Doe v. Marsalis*, 202 F.R.D. 233, 236 (N.D. Ill. 2001). Although "[t]he Federal Rules of Criminal Procedure lack a counterpart of Federal Rule of Civil Procedure 24, which allows intervention" in civil cases, "courts have permitted intervention" by intervenors who sought to make public records and evidence in criminal cases. *Blagojevich*, 612 F.3d at 559; *see also Associated Press*, 162 F.3d at 507-08. In deciding whether information should be made public, "the constitutional and common law right of access to judicial records and proceedings must be balanced against competing values that may require closure." *Associated Press*, 162 F.3d at 508. The "presumption" is "in favor of disclosure" of court documents. *Blagojevich*, 612 F.3d 558; *see also Jessup v. Luther*, 277 F.3d 926, 929 (7th Cir. 2002). Here, this presumption cannot be overcome. To the contrary, the public, and specifically Mr. Hall, unquestionably have strong interests in documents related to a possible pattern of prosecutorial misconduct in death penalty cases.

Therefore, undersigned counsel for Mr. Hall respectfully requests that the Court unseal the depositions taken in *United States v. Rogers*, 2:16-cr-0018.

Respectfully submitted,

 /s/ F. Italia Patti
Angela S. Elleman, Chief
F. Italia Patti, Assistant Federal Defender
§ 2255 Unit
Indiana Federal Community Defenders
111 Monument Circle, Suite 3200
Indianapolis, IN   46204
Phone: 317-383-3520
angie_elleman@fd.org
italia_patti@fd.org

Dated:  November 29, 2023

7

## CERTIFICATE OF SERVICE

I hereby certify that on November  29, 2023, the foregoing document was sent via email and/or U.S. Mail to counsel for the United States and Andrew Rogers in *United States v. Rogers*, 2:16-cr-0018.

/s/ F. Italia Patti
F. Italia Patti
Assistant Federal Defender