**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

IN RE: CHARLES HALL                          )
                                             )
                                             )
                                             )        2:23-mc-00001-JPH-MG
                                             )
                                             )
                                             )
                                             )

**JOINDER IN CHARLES HALL'S MOTION TO UNSEAL ALL DEPOSITIONS**
**AND MOTION TO UNSEAL ALL DEPOSITIONS**


Andrew N. Rogers, by and through undersigned counsel, respectfully joins the

Motion filed by non-party Charles Michael Hall for an order unsealing all depositions in

*United States v. Rogers* and moves for the Court to unseal all depositions in this case.

Undersigned counsel agrees that the depositions concerning potential prosecutorial

misconduct in *United States v. Rogers* are directly relevant to Mr. Hall's § 2255

litigation. More important to undersigned counsel, they are also of interest to the public.

There have been disturbing instances of misconduct by the Department of Justice

attorneys litigating capital cases. The public has a right to know about the serious

misconduct engaged in by attorneys for the federal government while seeking the death

penalty in cases against defendants who are poor, severely mentally ill, even

intellectually disabled. Because unsealing these depositions would help shed light on

this misconduct, undersigned counsel, who initially moved for these depositions to be

sealed, now urges the Court to unseal them.

1

Respectfully submitted,

<u>/s/ Monica Foster</u>
Monica Foster
Indiana Federal Community Defenders
111 Monument Circle, Suite 3200
Indianapolis, IN   46204
Phone: 317-383-3520
Monica_Foster@fd.org

Dated:  December 13, 2023

2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

IN RE: CHARLES HALL     )
             )
             )
             )   2:23-mc-00001-JPH-MG
             )
             )
             )
             )

## MEMORANDUM IN SUPPORT OF MOTION TO UNSEAL ALL DEPOSITIONS

Non-party Charles Hall, represented by attorneys in the § 2255 Unit of Indiana Federal Community Defenders, of which undersigned counsel Monica Foster is the Executive Director, has moved to unseal the depositions taken in *United States v. Rogers*. Undersigned counsel for Mr. Rogers agrees that the depositions are relevant to Mr. Hall's post-conviction proceedings and, more importantly, are of interest to the public. Therefore, these depositions should be unsealed.[1]

**I. Counsel discovered serious misconduct by DOJ attorneys during litigation of Mr. Rogers' case, but much of that information remains concealed from public scrutiny.**

In the course of litigating Mr. Rogers' case, undersigned counsel learned of serious misconduct by Department of Justice attorneys, including by attorneys in the Capital Case Section. *See* Dkt. No. 92 at 1. In response to undersigned counsel bringing this information to the Court's attention, this Court announced its "intent to allow depositions of Amanda Haines and James Peterson regarding the *Brady* violation

---

[1] The motion and this memorandum in support are being filed in *United States v. Rogers* and in the separate case opened to have the depositions unsealed, *In re Charles Hall*, 2:23-mc-00001-JPH-MG.

1

allegations Rogers makes in his motion" and that it would "allow limited discovery preliminary to those depositions." Dkt. No. 114. Mr. Rogers' counsel took Mr. Peterson's deposition on February 8, 2019, and took Ms. Haines' deposition on February 11, 2019. Dkt. No. 288 (Status Report). Undersigned counsel for Mr. Rogers furnished the depositions to this Court, and requested that the depositions be sealed. Dkt. Nos. 288, 290, 296, 298. In Response to undersigned counsel's motions, the Court ordered that the depositions should be maintained under seal.

After being furnished with evidence of misconduct, such as the depositions at issue, this Court ordered an evidentiary hearing to explore Mr. Rogers' "serious allegations of misconduct on the part of various Government attorneys". Dkt. No. 309. But as this litigation ensued, the local United States Attorney's Office sought deauthorization of the death penalty it had previously endorsed. The government's request for deauthorization was granted by then-Attorney General William Barr days before the misconduct hearing was scheduled to commence and Mr. Rogers entered a guilty plea in return for a life sentence immediately thereafter.[2] Dkt. Nos. 393, 395. Thus, the hearing on "many allegations of serious government misconduct that warrant inquiry and clarification" that initially "was precipitated by Amanda Haines' declaration, which indicated that James Peterson had destroyed what was arguably *Brady* material in Rogers' case" never occurred. Dkt. 332.

Because no hearing ever occurred and because the depositions of Ms. Haines, Mr. Peterson, and other witnesses are under seal, there is limited publicly available

---

[2] This exact plea offer had been extended by Mr. Rogers for the preceding four years, dating back to before he was even indicted.

2

information about the government's misconduct in *United States v. Rogers*.

Undersigned counsel is aware of at least two other death penalty cases involving

allegations of serious misconduct by Capital Case Section attorneys, including Mr.

Peterson. In both cases, the government withdrew its notice of intent to seek the death

penalty and accepted a guilty plea after the potential misconduct was brought to light.

Unsealing the depositions in *United States v. Rogers* would provide the public with more

information about the Capital Case Section's misconduct.

## II. There is a disturbing history of misconduct by Department of Justice attorneys litigating death penalty cases.

Department of Justice attorneys, in particular but certainly not limited to attorneys

from the Capital Case Section, have engaged in various forms of professional

misconduct in capital cases. This misconduct includes *Brady* violations,

misrepresentations to the court, and misrepresentations on subpoenas. In addition, the

*New York Times* has reported on Capital Case Section attorneys' workplace sexual

harassment, ranging from preferential treatment of male attorneys, showing naked

photographs of a woman at a work gathering, and groping an administrative assistant

during a work-sanctioned happy hour. *See* Katie Benner, *At the Justice Department's*

*Death Penalty Unit, Accusations of Favoritism Gender Bias and Unwanted Groping*,

New York Times (Mar. 13, 2018), https://www.nytimes.com/2018

/03/31/us/politics/justice-department-harassment-bias.html.

### A. *Brady* violations and misrepresentations to the court about *Brady* violations

There have been *Brady* violations and misrepresentations about *Brady* violations

by Department of Justice prosecutors. James Peterson was actually reprimanded by the

3

Virginia State Bar for a *Brady* violation committed before he became a federal prosecutor.

On March 12, 2014, James Peterson, then a prosecutor in Virginia, was reprimanded by the Virginia State Bar for withholding evidence. It was a "private reprimand" that "is not a matter of public record." But a copy of the private reprimand was sent to Antonio Navarro-Covert, the defendant in the case in which Mr. Peterson committed the *Brady* violation. Anjaulyeke Covert-Bryant explains that she and her family "filed a bar complaint with the Virginia State Bar against James Dennis Peterson for his actions arising from the prosecution of [her] grandson, Antonio C. Navarro-Covert." Ex. 1 (Bryant dec.).[3] Mr. Navarro-Covert "was convicted by a jury and sentenced to more than 6 years for an alleged assault." *Id.* "The victim of the assault, Nick Goss, did not testify at trial." *Id.* The family spoke to the victim, who said that, before trial, "he had described the assailant to law enforcement as a dark skinned black male." *Id.* Mr. Navarro-Covert "is a light skinned white and Hispanic male." *Id.* After the evidence Mr. Peterson withheld came to light, Mr. Navarro-Covert's conviction was set aside. *Id.*

Discussing Mr. Peterson's *Brady* violation, the Stafford County Circuit Court judge said, "The Commonwealth's position in this case seems to be, well, maybe he didn't assault Goss, but he assaulted somebody, and other people assaulted somebody anyway, so it really doesn't make any difference, he is guilty. And I just don't think that's true in this case." Ex. 2 (5/2/12 Stafford Cty. Tr.). Indeed, in seeking to uphold the

---

[3] This declaration and a letter about the reprimand were later made part of the record in *United States v. Ham*, discussed below.

conviction, Mr. Peterson argued that unless the defense specifically identified and requested contradictory eyewitness statements, he was not obligated to turn them over, and, in any event, if the defendant was not guilty of the charged offense, he must be guilty of something. Ex. 3 (Sanctions Motion, *United States v. Ham*). This is not the law.

In 2015, Mr. Peterson, at that point an attorney in the Department of Justice's Capital Case Section, began working on the prosecution of James Wayne Ham in the Southern District of Texas. The government was seeking the death penalty against Mr. Ham. According to a filing by Mr. Ham's attorneys, although the court instructed Mr. Peterson to disclose any ethics violations, he did not disclose the Virginia reprimand. Ham Dkt. No. 183. Mr. Peterson's supervisor at the Capital Case Section, Richard Burns, has admitted that he knew about the reprimand but he also did not disclose it to the court. *Id.* Counsel for Mr. Ham learned of the reprimand family and notified the judge presiding over Mr. Ham's prosecution. *Id.*

Mr. Ham's attorneys filed for sanctions against Mr. Peterson on March 5, 2020. Ham Dkt. No. 171 (also attached as Ex. 3). Fourteen days later, on March 19, 2020, Mr. Peterson sent a letter to the court stating that he was no longer counsel in the case "[d]ue to Department of Justice staffing issues." Ham. Dkt. No. 182.[4] Later, the government withdrew its Notice of Intent to Seek the Death Penalty and Mr. Ham plead guilty and received a life sentence. Ham Dkt. Nos. 205, 208. Issues surrounding Mr.

---

[4] Removing CCS lawyers from cases when they come under fire for ethical lapses is a common strategy at CCS and a review of the docket in this case bears this out. This is in spite of former Director Carwile's sworn testimony that he was loathe to replace CCS lawyers once they entered an appearance in a particular capital case.

Peterson's withholding of evidence in a prior case and prosecutors' potential withholding of evidence in Mr. Ham's case were not addressed further in publicly available filings.

**B. Improper deceptive subpoenas**

In 2016, the government initiated its prosecution of Carlo Wilson in the Eastern District of Michigan. The government was seeking the death penalty against Mr. Wilson. In July 2020, the court determined that Department of Justice attorneys prosecuting Mr. Wilson issued an improper subpoena to the Huron County Jail for records pertaining to Mr. Wilson's detention. Wilson Dkt. Nos. 1298, 1509. The Eastern District of Michigan's Local Rules direct that a party seeking a subpoena under Federal Rule of Criminal Procedure 17(c) must seek prior approval from the court and that the subpoena must state that the requested items be sent to the court, not the party. In contravention of this rule, the government sent a subpoena for Mr. Wilson's records without the court's approval and the subpoena directed that the materials go directly to the government, not the court. The court determined that, even if the subpoena did not violate Federal Rule of Criminal Procedure 17, it unquestionably violated Local Rule 17.1. The government also issued three other improper subpoenas. Wilson Dkt. No. 1509. Mr. Peterson was working on the prosecution of Mr. Wilson. Although Mr. Peterson was apparently not the attorney who issued the improper subpoena to the Huron County Jail, he was aware of the subpoena. Wilson Dkt. No. 1517.

Before the court made its ultimate decision about what sanctions would be appropriate, the government withdrew its notice of intent to seek the death penalty in that case.

6

**C. Sexual misconduct**

In addition to the *Brady* violations and other deceptive conduct, attorneys in the Capital Case Section have also been accused of sexual misconduct. According to reporting by the *New York Times*, the Section's former Chief, "promoted gender bias and a 'sexualized environment'" and "fostered a culture of favoritism and sexism." Katie Benner, *At the Justice Department's Death Penalty Unit, Accusations of Favoritism Gender Bias and Unwanted Groping*, New York Times (Mar. 13, 2018), https://www.nytimes.com/2018/03/31/us/politics/justice-department-harassment-bias.html. "In one episode, his deputy groped an administrative assistant at a bar in view of their colleagues, according to some who were present. [The Chief] Mr. Carwile asked the witnesses to keep it secret, one said." *Id.* "Employees of the unit, the capital case section, complained about the issues to Justice Department officials, the inspector general and the Equal Employment Opportunity Commission at least 12 times." *Id.* However, "[b]oth Mr. Carwile and his deputy, Gwynn Kinsey, remained Justice Department employees despite the inquiries." Indeed, according to the New York Times' reporting, Mr. Carwile was not removed from his post until the New York Times inquired about the grievances.

In July 2018, the Office of the Inspector General released its Investigative Summary, attached as Exhibit 4, which found that Kinsey had sexually harassed a subordinate employee by making unwanted sexual advances and creating an "intimidating, hostile, and offensive working environment." It concluded Carwile gave a "non-specific" instruction not to discuss the above matters. The OIG also concluded Carwile "lacked candor with the OIG", an apparent reference to his not being truthful.

7

All of this was in violation of DOJ regulations and policy. In spite of this, the OIG protected the anonymity of Kinsey and Carwile by referring to them as Supervisory Attorneys 1 and 2. It should be noted the OIG is a division of the DOJ, the entity they were investigating.

The complaints of sexual misconduct are relevant to this Court's decision about whether to unseal the depositions in this case for three reasons. First, prosecutors exercise an enormous amount of discretion and have ample opportunities to commit misconduct. Thus, whether a prosecutor acts with integrity greatly impacts whether justice is carried out. Sexual misconduct, including groping a coworker, reveals a lack of integrity. This indicates that discussions of case-related misconduct should be open to public scrutiny, so the public can assess whether prosecutors carried out their case-related duties with a similar lack of integrity. Second, a "culture of favoritism" and bias is a culture where some prosecutors may get away with repeated misconduct, if they are favored by supervisors. Mr. Carwile's handling of sexual misconduct reveals as much. His response to his deputy groping a co-worker was, according to the *New York Times*, to ask everyone who witnessed the incident not to say anything. The public should have the chance to scrutinize case-related misconduct that occurred in the context of this "culture of favoritism." Third, the *New York Times* notes that Mr. Carwile kept his leadership position until the paper inquired about employees' grievances. This reveals that public scrutiny was the only reason misconduct within the Capital Case Section was meaningfully addressed. The public should have the opportunity to scrutinize the case-related misconduct that occurred in an environment apparently devoid of accountability.

8

**D. Disregarding the rule of law and rushing executions**

The Department of Justice's rush to execute thirteen individuals in 2020 and 2021 also provides important context for why the public must be able to scrutinize the actions of federal prosecutors seeking the death penalty. There is significant public concern about how the executions were carried out, with many people voicing concern that the rule of law, due process, justice, and public health were all cast aside in the rush to kill thirteen people. As Justice Sotomayor explained the unseemly judicial rush to kill:

> Rather than permit an orderly resolution of these suits [challenging death sentences], the Government consistently refused to postpone executions and sought emergency relief to proceed before courts had meaningful opportunities to determine if the executions were legal.
>
> Throughout this expedited spree of executions, this Court has consistently rejected inmates' credible claims for relief. The Court has even intervened to lift stays of execution that lower courts put in place, thereby ensuring those prisoners' challenges would never receive a meaningful airing. The Court made these weighty decisions in response to emergency applications, with little opportunity for proper briefing and consideration, often in just a few short days or even hours. Very few of these decisions offered any public explanation for their rationale.
>
> This is not justice.

*United States v. Higgs*, 141 S. Ct. 645, 647 (2021) (Sotormayor, J., dissenting from the grant of certiorari and the order vacating the lower court's stay of execution).

"Secrecy was a hallmark of the 13 federal executions during the last six months of Trump's presidency." Michael Tarm, *Fuller picture emerges of the 13 federal executions at the end of Trump's presidency*, Associated Press (Oct. 3, 2023), https://apnews.com/article/trump-executions-biden-death-penalty-brandon-bernard-

c1b26807c5c40b337d14485c3d6df2de. As more details about the executions have come out, an ever more disturbing picture has developed.

"In its hurry to use its final days in power to execute federal prisoners, the administration of President Donald Trump has trampled over an array of barriers, both legal and practical, according to court records that have not been previously reported." Isaac Arnsdorf, *Inside Trump and Barr's Last-Minute Killing Spree*, ProPublica (Dec. 23, 2020), https://www.propublica.org/article/inside-trump-and-barrs-last-minute-killing-spree. "The fuller picture reveals that officials cut corners and relied on a pliant Supreme Court to get the executions done, even when some — including Trump himself, in [Brandon] Bernard's case — agreed that there might be valid reasons not to proceed with them all." Michael Tarm, *Fuller picture emerges of the 13 federal executions at the end of Trump's presidency*, Associated Press (Oct. 3, 2023), https://apnews.com/article/trump-executions-biden-death-penalty-brandon-bernard-c1b26807c5c40b337d14485c3d6df2de.

In addition to cutting corners and trampling over legal barriers, the Justice Department also chose to carry out the executions despite the COVID-19 pandemic, at a time when the virus was spreading rapidly. The Caligula-like atmosphere existing at CCS described above apparently extended to the BOP's executions in Terre Haute. The executions themselves became superspreader events when BOP staff caught COVID-19 in a Terre Haute strip club, where they gathered to celebrate after carrying out three executions in a single week.[5] Health officials traced prison worker COVID-19 cases

---

[5] WFIU, *Rush to Kill* (podcast), Episode 1: The Gold Standard, https://indianapublicmedia.org/news/episode-1-the-gold-standard.php; Michael Tarm, Michael Balsamo & Michael R. Sisak, Federal executions likely a COVID superspreader, Associated Press (Feb. 5, 2021),

back to a topless dancer in Terre Haute. "As a result of lapses like this one the Federal Correctional Complex in Terre Haute became the epicenter of the corona pandemic in the federal system."[6]

Concerns raised by the Justice Department's killing spree remain relevant because under the current Administration, questions persist about how the government decides who it wants to kill. David Nakamura, *Justice Department Standards on Federal Death Penalty Called Confusing*, Wash. Post (Feb. 11, 2023), https://www.washingtonpost.com/national-security/2023/02/11/death-penalty-justice-department/. In addition, many of the lawyers involved in facilitating the executions are still with the Justice Department. Continued scrutiny of their actions is warranted.

This is the backdrop against which undersigned counsel asks this Court to take the simple step of unsealing depositions—depositions that were sealed in the first place because of undersigned counsel's own request.

**III. This Court has the authority to unseal the depositions taken in this case and should exercise that authority to expose the government's actions to public scrutiny.**

This Court has the authority to unseal the depositions taken in this case. "It is beyond dispute that most documents filed in court are presumptively open to the public." *Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009). This includes discovery materials filed with the court. *Id.* at 1075; *see also, e.g.*, *Jessup v. Luther*, 277 F.3d 993, 997 (7th Cir. 2002). The Court must find good cause to maintain documents under seal, and here there is not good cause to keep these depositions under seal. To the contrary, there is

---

https://apnews.com/article/public-health-prisons-health-coronavirus-pandemic-executions-956da680790108d8b7e2d8f1567f3803.

[6] *Rush to Kill* (podcast), Episode 1.

11

every reason to allow public access to these documents because they address misconduct by government attorneys in death penalty cases. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945-46 (7th Cir. 1999).

Therefore, undersigned counsel respectfully requests that this Court unseal the depositions taken in *United States v. Rogers* and joins Mr. Hall's motion to unseal.

Respectfully submitted,

/s/ Monica Foster
Monica Foster
Indiana Federal Community Defenders
111 Monument Circle, Suite 3200
Indianapolis, IN   46204
Phone: 317-383-3520
Monica_Foster@fd.org

Dated:  December 13, 2023

12

## CERTIFICATE OF SERVICE

I certify that on December 13, 2023, a copy of the foregoing document was filed electronically in *United States v. Rogers*, 2:16-cr-0018-WTL, and *In re Hall*, 2:23-mc-00001-JPH-MG. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>/s/ Monica Foster</u>
Monica Foster