**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

IN RE: CHARLES HALL )
)
)
)            2:23-mc-00001-JRS-MG
)
)
)
)

### REPLY IN SUPPORT OF MOTION BY CHARLES HALL TO UNSEAL ALL DEPOSITIONS IN *UNITED STATES V. ROGERS*

None of the government's arguments in response to Mr. Hall's motion to unseal depositions is convincing. The government argues that this Court should not unseal depositions about a pattern of prosecutorial misconduct because Mr. Hall lacks Article III standing or a cognizable right to intervene in a closed criminal proceeding, because his motion is untimely, and because he has not presented a valid reason to unseal the depositions. Gov. Resp. at 8. As to the government's first and second points, Mr. Hall has standing and a cognizable right to intervene in a closed criminal case because the documents Mr. Hall seeks are judicial documents and there is a strong public interest in their disclosure. The public and Mr. Hall have an interest in ensuring the integrity of federal death penalty prosecutions. As to the government's third point, Mr. Hall's motion is timely. The government's argument that the public interest in the integrity of federal death penalty prosecutions goes "stale" has no basis. Even if this argument were logical, recent news articles dispute its premise. As to the government's fourth point, Mr. Hall has presented valid justifications for unsealing the documents—namely, the strong public interest in the integrity of federal death penalty prosecutions and Mr. Hall's interest in the integrity of his own federal death penalty prosecution. Although the government attempts to

1

separate the public interest from Mr. Hall's, there is no daylight between them: the public has an interest in uncovering, correcting, and preventing misconduct in criminal prosecutions, death penalty prosecutions in particular; Mr. Hall has the same interest, because a federal prosecutor who has been implicated in misconduct in multiple death penalty cases obtained a death sentence against him. Therefore, the government has shown no reason, either procedural or substantive, why this Court should keep the depositions under seal.

**I. Mr. Hall has standing because the records are judicial records to which there is a public right of access.**

The government's first argument is that Mr. Hall does not have Article III standing because the depositions are not "judicial records" or "judicial document[s]" and therefore that there is no right of public access to the documents. The government attempts to rely on *Bond v. Utreras*, 585 F.3d 1061 (7th Cir. 2009), to argue that some documents filed on the docket are not judicial records. But *Bond* supports Mr. Hall's position, not the government's.

*Bond* held that "[t]he rights of the public" to access documents "kick in when material produced during discovery is filed with the court." *Bond*, 585 F.3d at 1075 (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 & n.19 (1984)). Those rights "kick in" with filing because "[a]t this point, the documents have been 'used in [a court] proceeding,' and consequently the possibility exists that they could 'influence or underpin the judicial decision' and they are therefore presumptively 'open to public inspection unless they meet the definition of trade secret or other categories of bona fide long-term confidentiality.'" *Bond*, 585 F.3d at 1075 (second alteration in original) (quoting Fed. R. Civ. P. 5(d); *Baxter Int'l v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002)) (citing *Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999)).

The government says that "[t]he *Bond* court noted that entry on the court docket, by itself, does not transform discovery materials into 'judicial records,' to which the right of access attaches: the public does not have a right even to discovery material that a judge reviews in the course of discovery proceedings." Gov. Resp. at 10 (citing *Bond*, 585 F.3d at 1075 n.8). This point has no bearing on this case. While *Bond* certainly says that "the public does not acquire a right to access discovery material just because a judge might review it in camera in the course of discovery proceedings," *Bond* is clear that "*discovery material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right.*" *Bond*, 585 F.3d at 1075 n.8 (emphasis added) (quoting *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312-13 (11th Cir. 2001)). Since the *Bond* opinion, the Seventh Circuit has emphasized again that "'documents *filed in court* are presumptively open to the public'" and "the 'general right of public access . . . is enough to give members of the public standing' to seek them." *Carlson v. United States*, 837 F.3d 753, 760 (7th Cir. 2016) (alterations in original) (quoting *Bond*, 585 F.3d at 1066, 1074).

Persisting in its argument that the depositions are not "judicial records," the government asserts "it is not apparent that the Court relied upon [the depositions] in resolving a substantive motion or exercising its judicial authority." Gov. Resp. at 10. The government points out that "[t]he depositions related to Rogers' motion to strike the NOI [Notice of Intent to Seek the Death Penalty]" and then asserts that "the government's voluntary dismissal of the NOI mooted the motions and thereby deprived the depositions of any relevance." *Id.* at 10-11.

For three reasons, this argument is baseless. First, the government is wrong about the standard for when a document is a "judicial record" subject to the common law right of public access. "[D]iscovery material *filed in connection* with pretrial motions that require judicial

resolution of the merits is subject to the common-law right" of public access to court documents. *Bond*, 585 F.3d at 1075 n.8 (emphasis added); *see also Carlson*, 837 F.3d at 760. There is no requirement that it be "apparent that the Court relied upon" the documents at issue in resolving any motions or exercising its judicial authority. Gov. Resp. at 11. It is enough that the documents were "filed in connection with pretrial motions" because, as *Bond* explains, "[a]t this point . . . *the possibility exists* that they could 'influence or underpin the judicial decision.'" *Bond*, 585 F.3d at 1075 & n.8 (emphasis added) (quoting *Baxter Int'l*, 297 F.3d at 545; *Chi. Tribune Co.*, 263 F.3d at 1312-13). It is this possibility that renders the documents subject to a right of access, even without conclusive evidence that the court relied on them.

Second, although it need *not* be "apparent that the Court relied upon" the documents at issue in resolving any motions in exercising judicial authority, in this case, it *is*, in fact, "apparent that the Court relied upon" the documents in ordering an evidentiary hearing on government misconduct, a quintessential exercise of judicial authority. As the government notes, "the Court ordered the depositions 'to determine whether an evidentiary hearing will be required on Rogers' misconduct allegations.'" Gov. Resp. at 11 (quoting Dkt. No. 243 at 2). In its order setting a hearing on potential government misconduct, the Court explained, "[a]fter reviewing the parties' relevant submissions, the Court has determined that Defendant Andrew Rogers' Motion to Strike the Notice of Intent to Seek the Death Penalty for the Government's Intentional Withholding and Destruction of Brady Information cannot be resolved without an evidentiary hearing" and thus ordered a hearing to take place. Dkt. No. 309 at 1 (internal record citations omitted).[1] Later orders also make clear that the Court based its determination that a hearing was necessary on the

---

[1] Citations to "Dkt. No. . . ." reference the documents on the docket in *United States v. Rogers*.

depositions. The Court explained, "information *gleaned though the discovery process* . . . coupled with what appear to be multiple Government filings containing false statements, has created concerns about additional possible misconduct and convinced the Court that a full inquiry is necessary." Dkt. No. 332 at 1 (emphasis added). Clarifying the issues to be addressed at the ordered hearing, the Court ruled, "[t]opics explored during the depositions of Amanda Haines, James Peterson, James Warden, and Steven Eckert also may be relevant." Dkt. 380 at 1.

Third, because it is enough that the documents were "filed in connection with pretrial motions," *see Bond*, 585 F.3d 1075 n.8, the government's statement that its "voluntary dismissal of the NOI mooted the motions and thereby deprived the depositions of any relevance" is immaterial. In addition to being entirely immaterial, the government's assertion that dismissing the NOI "deprived the depositions of any relevance" also defies logic.

For the Court to accept the argument that dismissal of the NOI "deprived the depositions of any relevance," the Court would have to believe that it was entirely coincidental that four days before a hearing on the government's misconduct was set to commence, the government accepted Mr. Rogers's offer to plead guilty in exchange for a life sentence, although Mr. Rogers initially made the plea offer years earlier, before he was indicted. A much more plausible explanation is that the government accepted Mr. Rogers's long-standing plea offer to avoid the hearing. The government had every incentive to avoid the hearing. At the time the government accepted Mr. Rogers's long-standing plea offer, the government had pending a motion to quash the subpoena to the United States Attorney for the Southern District of Indiana, who was on Mr. Rogers's witness list. *See* Dkts. 385 (government's motion to quash subpoena to Josh Minkler, filed May 1, 2019); 386 (Court's entry acknowledging that parties had informed the court that the parties may be entering an agreement to resolve the case, also filed May 1, 2019). Mr.

5

Rogers's witness list also included Department of Justice attorneys who were at that time or had previously been assigned to the Capital Case Section (including the current section chief); Assistant United States Attorneys from the Southern District of Indiana; a BOP psychologist; and an FBI agent. Dkt. No. 376-1 at 1. Yet the government would now have this Court believe that their decision to accept Mr. Rogers's long-standing plea offer was in no way calculated to avoid having these individuals testify about possible misconduct, and in turn accept that depositions that prompted the Court to set this hearing were irrelevant to the outcome of Mr. Rogers's case. In light of the government's argument, it is worth recalling that Capital Case Section attorneys have been accused of misconduct in other cases as well, and those cases were also resolved by plea agreements that effectively cut off further inquiry into misconduct. This more plausible explanation—that the government accepted Mr. Rogers's plea offer to avoid the hearing—makes the depositions extremely relevant to the ultimate resolution of the case because the depositions convinced the Court that a hearing was necessary.

Therefore, "'documents *filed in court* are presumptively open to the public'" and "the 'general right of public access . . . is enough to give members of the public standing' to seek them." *Carlson*, 837 at 760. Mr. Hall has standing to seek unsealing of the depositions in *United States v. Rogers*, documents which were filed in court.

**II. Mr. Hall does have a right to intervene although *United States v. Rogers* is closed because there is a public interest in the depositions.**

The government's second argument is that Mr. Hall does not have a right to intervene in *United States v. Rogers* because the case is closed. The government's reasoning appears to be that regardless of whether the documents are of public interest, Mr. Hall's personal stake in the integrity of federal death penalty prosecutions makes him ineligible to intervene in a closed

criminal case. The government cites no basis for its suggestion that in order to intervene, a third-party must be unaffected by the issue that is of public interest. Courts have generally held that documents that shed light on the conduct of government officials are documents in which there is a public interest. *See, e.g.*, *CREW v. DOJ*, 978 F.Supp.2d 1, 12 (D.D.C. 2013). Consequently, there is a public interest in documents about potential misconduct in federal death penalty cases. Mr. Hall's individual interest in these documents does not negate this public interest or disqualify him from pursuing the documents. There is no reason why Mr. Hall having a personal reason for pursing the documents would render him ineligible to seek to unseal records in which there is a public interest.

The government cites *United States v. Collins*, No. 09-CR-115, 2013 WL 4780927 at *1 (E.D. Wisc., Sept. 5, 2013), for the proposition that "[n]o body of case law establishes an individual's right to intervene in a criminal case to obtain sealed records for private use." Gov. Resp. at 12. Even if cases from the Eastern District of Wisconsin were binding on this Court, the circumstances in *Collins* are entirely unlike the circumstances in this case; as such, *Collins* has no bearing on this case.

In *Collins*, a third-party "filed in this court a motion to intervene in defendant's criminal case to obtain an order unsealing a psychological report authored by Dr. Sheryl Dolezal, which defendant submitted prior to his sentencing hearing" arguing that that Federal Rule of Civil Procedure 24(b) "afforded him a right to intervention, and that he had a particularized and compelling need for Dr. Dolezal's report because it constituted the only evidence reflecting the depth of defendant's reading comprehension problems and the difficulty he had completing forms." *Collins*, 2013 WL 4780927 at *1. The court held that a third-party could not intervene to obtain another person's psychological report that he sought solely for his own purposes.

In protecting a litigant's medical information in which there was no public interest, *Collins* did not hold that when there is a public interest in documents, a third-party who also has a particular interest in the documents is not permitted to seek to obtain those records. *Collins* stands for the proposition that an exclusively private interest in documents is insufficient to intervene in a closed criminal case. *Collins* does not stand for the proposition that a private interest in documents disqualifies someone from intervening to seek documents in which there is a public interest.

The depositions Mr. Hall seeks could not be more distinct from a private citizen's psychological records. The depositions Mr. Hall seeks address a possible pattern of misconduct by government attorneys pursuing the death penalty. The integrity of government officials when seeking the ultimate punishment is an issue in which the public undoubtedly has an interest. Mr. Hall's interest and the public interest align. In fact, Mr. Hall seeks these records in part to support a pending clemency application. The president may be persuaded to commute an individual's sentence because of matters of profound public interest. The relevance of these depositions to Mr. Hall's clemency application highlights how interconnected Mr. Hall's own interest is with the public's interest.

Therefore, Mr. Hall can seek unsealing of the depositions in *United States v. Rogers* even though the case is closed, because there is a public interest in these records. The fact that a public interest and Mr. Hall's interest align does not exempt these records from scrutiny.

**III. Mr. Hall's motion is not untimely as public interest in the integrity of federal death penalty prosecutions does not go "stale."**

The government's third argument is that "[e]ven if this Court determines that Hall has standing and a basis for intervention on behalf, of the public, it should deny his motion as too

8

late," although the government also admits that "[d]ue to the ad hoc nature of intervention in criminal cases, there is no prescribed time limit." Gov. Resp. at 14. The government argues that "public interest in the allegations against CCS attorneys may have existed in 2018, when *The New York Times* published an article, cited by Hall, that mentions the allegations against Peterson." Gov. Resp. at 14. But at this point, the government argues, "the claims are stale." Gov. Resp. 16.

There are several problems with this argument. There is no support for the notion that the public interest in the integrity of federal criminal prosecutions goes "stale" after a few years, while defendants continue to serve time in prison and face possible execution. (The documents at issue in *Carlson*, for example, were seventy-year-old grand jury materials. *Carlson*, 837 F.3d at 755.) Nor is there any requirement that a leading news outlet have recently published an article about an issue to establish public interest.[2] That said, the alleged misconduct in *United States v. Rogers* was, in fact, discussed in an article the Associated Press published in July 2023. *See* Michael Tarm, *How DOJ Made Different Death Penalty Decisions in the Pittsburgh Synagogue and Texas Mall Massacres*, Associated Press (July 14, 2023), https://apnews.com/article/death-penalty-capital-section-garland-bowers-crusius-27d61a947178e2a6e505c97bcb55f78a (saying that "[c]ritics of the department single out an enigmatic department division, the Capital Case

---

[2] The government may misunderstand the definition of "interest" being used in the phrase "public interest." "Public interest" (like "best interest" or "in one's interest") refers to public *benefit* or *importance*, not the public's *curiosity*. Leading news outlets often bring light to matters of public importance, as the *New York Times* did in publishing an article about CCS misconduct. But something can be *important* without having recently been featured in a leading news outlet (and indeed many important issues are not *interesting*). Regardless, CCS misconduct was recently featured in a leading news outlet, because the public is interested in (that is, curious about) this important issue.

Section" and discussing the misconduct allegations in Andrew Rogers's case, quoting Monica Foster).[3]

The government also argues that any public interest claim is "stale" because CCS "has new management and largely new personnel." Gov. Resp. at 16. Yet the Department of Justice website lists Richard E. Burns, who was on Mr. Rogers's witness list for the May 2019 misconduct hearing, as the current Chief of the Capital Case section. *See* Capital Case Section, https://www.justice.gov/criminal/capital-case-section (last visited Feb. 5, 2024); Dkt. No. 376-1 at 1. Further, Mr. Hall and others were prosecuted, convicted and sentenced under the "prior" management and personnel. There is a public interest in interrogating the circumstances under which those convictions and sentences were obtained.

Therefore, even if the public interest in ensuring the integrity of death sentences could go "stale," it has not, and Mr. Hall's motion is timely.

---

[3] Additionally, many other articles have recently been published about the federal death penalty. *See, e.g.*, Michael Tarm, *Fuller Picture Emerges of the 13 Federal Executions at the End of Trump's Presidency*, *Associated Press* (Oct. 3, 2023), https://apnews.com/article/trump-executions-biden-death-penalty-brandon-bernard-c1b26807c5c40b337d14485c3d6df2de; David Nakamura, *Justice Department Standards on Federal Death Penalty Called Confusing*, *Wash. Post* (Feb. 11, 2023), https://www.washingtonpost.com/national-security/2023/02/11/death-penalty-justice-department/. *NPR* and *WFIU* Public Radio recently published an eight-episode podcast entirely about the federal death penalty. *See NPR* Podcast Directory, *Rush to Kill*, https://www.npr.org/podcasts/1205108509/w-f-i-u-rush-to-kill (last visited Feb. 5, 2024). Sen. Dick Durbin and Rep. Ayanna Pressley released a statement about the federal death penalty as recently as January 2024. *See* U.S. Senate Committee on the Judiciary, *Durbin, Pressley Statement on Justice Department Seeking the Death Penalty in Buffalo Supermarket Shooting Case*, https://www.judiciary.senate.gov/press/releases/durbin-pressley-statement-on-justice-department-seeking-the-death-penalty-in-buffalo-supermarket-shooting-case (last visited Feb. 5, 2024).

**IV. Mr. Hall's motion is meritorious, as he has a common law and First Amendment right to depositions about prosecutorial misconduct by the prosecutor who obtained a death sentence against him.**

Finally, the government argues that Mr. Hall's motion to unseal lacks merit. The government's arguments on the merits of Mr. Hall's motion repeat their procedural arguments. The government's argument that there is no common law right to access the documents repeats its argument that the claim is untimely, asserting that "[a]s to the public interest, the claims are stale" because "[g]eneral references to a public interest, either long vindicated or long forgotten, do not demonstrate a compelling need for unsealing the depositions." Gov. Resp. at 16. As noted above, it is not clear where the government got the idea that that public interest in the integrity of federal death sentences could go "stale." Even if it does, and even if the way to prove freshness is pointing to news articles on the subject, a recent Associated Press article and the plethora of other recent articles about the federal death penalty selection process undermine the government's argument that the public interest has gone stale. And DOJ's own website undermines the government's argument that current CCS personnel are unconnected to Mr. Rogers's misconduct allegations, as the current section chief was on Mr. Rogers's witness list for the misconduct hearing.

The government then tries to argue that Mr. Hall's own interest in the records "counsels against the request." Gov. Resp. at 16. As noted above, Mr. Hall's interest in the documents does not disqualify him from seeking these documents, given that there is a public interest in the documents. Mr. Hall's interest and the public interest align, but that does not negate the fact that these records are of public interest. For this reason, Mr. Hall's motion to unseal is not a discovery request, but a request to unseal documents in which there is a public interest.

11

The government's First Amendment argument is equally unavailing, also for reasons discussed above. The government argues that "[w]hether an individual has a First Amendment right to court records turns on whether the document or proceeding has 'historically been open to the press and general public' and whether 'public access plays a significant positive role in the functioning of the particular process in question.'" Gov. Resp. at 18 (quoting *Press-Enterprise Co. v. Superior Court of California for Riverside County*, 478 U.S. 1, 8 (1986)). The government then argues that depositions historically were not open to the public. As discussed above, however, the depositions in this case were made a part of the docket, making them judicial records, which historically were open to the public. In the same vein, the government argues that allowing public access to depositions in civil cases would make the civil discovery process more burdensome and that the public does not have the right to see how that process works. Gov. Resp. at 18. The documents at issue in this case are not depositions in a civil case and the interest at issue is not in seeing how civil discovery works. The documents at issue are depositions that the Court relied on in determining that it was necessary to hold a hearing on whether prosecutorial misconduct should preclude the government from seeking the death penalty in a criminal prosecution.

Therefore, Mr. Hall's motion is meritorious, and he has established why the depositions in *United States v. Rogers* should be unsealed.

**V. The Court should unseal these depositions, not grant Mr. Hall access pursuant to a protective order, and the government's argument to the contrary contradicts nearly every other argument in the government's Response.**

Having spent most of its Response arguing that Mr. Hall would have standing to obtain these documents only if there is a broader public interest at stake, the government concludes by urging the Court that if it releases the depositions at all, it should do so subject to a protective

order that prevents anyone not directly involved in Mr. Hall's case from seeking them. Gov. Resp. at 19-20. The government contradicts itself and, moreover, the government has made no convincing arguments that these documents should not be available to the public. If anything, the government invites the question of why they are working so hard to keep the depositions secret. Therefore, for the foregoing reasons, the depositions in *United States v. Rogers* should be unsealed or Mr. Hall and his counsel should be granted access to these documents to aid his litigation, petition for clemency, and other efforts seeking to overturn his death sentence.

Respectfully submitted,

*/s/ F. Italia Patti*
Angela S. Elleman, Chief
F. Italia Patti, Assistant Federal Defender
§ 2255 Unit
Indiana Federal Community Defenders
111 Monument Circle, Suite 3200
Indianapolis, IN   46204
Phone: 317-383-3520
angie_elleman@fd.org
italia_patti@fd.org

Dated:  February 5, 2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 5, 2024, the foregoing document was filed

electronically. Notice of this filing will be sent to the parties of record by operation of the

Court's electronic filing system and parties may access this filing through the Court's system.

*/s/ F. Italia Patti*
F. Italia Patti
Assistant Federal Defender